**The PEOPLE of the State of Colorado, Complainant,**

v.

**David William BOWMAN, Attorney–Respondent.**

**No. 94SA142.**

Supreme Court of Colorado, En Banc.

Dec. 19, 1994.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

No appearance by attorney-respondent.

PER CURIAM.

A hearing panel of the Supreme Court Grievance Committee approved the findings and recommendation of a hearing board that the respondent be disbarred,[1] pay restitution, and be assessed costs. The respondent defaulted before the hearing board and has not appeared in this court. We accept the recommendation of the hearing panel and order that the respondent be disbarred.

I.

Since the respondent defaulted before the hearing board, the allegations of fact con-

---

1. The respondent was admitted to the bar of this court on October 17, 1977, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b). The respondent was immediately suspended from the practice of law by order dated May 6, 1993, pending the resolution of this proceeding.

tained in the complaint were deemed admitted. C.R.C.P. 241.13(b); *People v. Barr*, 855 P.2d 1386, 1386 (Colo.1993). Based on the respondent's default and the evidence presented, the hearing board found that the following had been established by clear and convincing evidence.

■ The respondent represented Richard and Deanna Abell in April 1990 with respect to the preparation and filing of the Abells' federal and Colorado income tax returns for the tax year ending December 31, 1989. The respondent met with the Abells on April 9, 1990, and showed them the federal and state tax returns he had prepared, which indicated that the Abells owed the federal government $4,117.00 and the state government $2,980.00. The respondent agreed to file both returns and to pay the Abells' liability to the federal and state governments on or about April 15, 1990. The Abells signed the returns and on April 17, 1990, they gave the respondent two checks payable to the respondent's law firm totaling $7,097.00, the sum of their federal and state tax liability according to the respondent.

After moving to Virginia, the Abells received a letter in July 1991 from the Internal Revenue Service stating that the IRS had not received their 1989 tax return. They contacted the respondent and he told them that he had filed the federal return and paid the amount due by check. He stated that he would provide a copy of his check to the IRS and to the Abells. The Abells got another letter from the IRS, however, in September 1991, which said that the IRS had not received their 1989 tax return or explanation why no return had been filed. The Abells sent a copy of the IRS letter to the respondent and wrote him that they had assumed the respondent had taken care of the matter.

The IRS wrote the Abells a third letter in November 1991 regarding the absence of their 1989 return. The Abells told the IRS that they had given the respondent their money to pay their 1989 income tax. They also asked the respondent to provide the information to the IRS.

Then, on November 26, 1991, the Colorado Department of Revenue informed the Abells that their 1989 state income tax return had not been received. The Abells wrote to the respondent once again and advised him that they had contacted the Office of Disciplinary Counsel. After receiving this letter, the respondent told the Abells that he had met with the IRS and showed their representative a copy of his check paying their 1989 income tax liability. However, the respondent did not send a copy of this check or a letter from the IRS representative confirming that the meeting had occurred, as the Abells requested. The board found that the respondent had neither filed the Abells' tax returns nor paid the tax owed, and that he engaged in fraud and misrepresentation by continuing to lie to the Abells about their tax returns.

On or before February 11, 1992, the Abells sent the IRS an unsigned copy of their 1989 return that they had gotten from the respondent in April 1990. On February 12, 1992, however, an altered 1989 return purportedly signed by the Abells and the respondent was filed with the IRS. The return had been altered to show that the Abells were due a $69.00 tax refund rather than owing the federal government $4,117.00. The altered return, which the Abells never actually signed, shows a deduction of $19,036.00 for expenses in connection with money earned from rent. The correct deduction, as reflected on the return that the respondent gave the Abells in April 1990, was $5,839.00. The hearing board determined that the respondent's pattern of deceit was compounded by mailing the altered federal income tax return to the IRS.

Based on the unaltered 1989 return provided by the Abells, the IRS determined that the Abells owed the federal government $6,740.21, based on $4,117.00 in unpaid tax, $1,440.95 in penalties, and $1,182.26 in interest. The respondent went to an IRS office in Colorado Springs and paid $6,743.00 to satisfy the Abells' liability.

In February 1993, the Colorado Department of Revenue notified the Office of Disciplinary Counsel that no state income tax return had been filed on behalf of the Abells for 1989. When he was interviewed by counsel for the Office of Disciplinary Counsel, the

respondent alleged that he did file the Abells' 1989 state and federal tax returns, and included a check for the amount owed with each return. Although he said that he did not have the canceled checks, the respondent stated that checks numbered 2497 and 2498 from his business account were written for this purpose, but he claimed that neither the state nor the IRS cashed them. The monthly statements from the respondent's business checking account do not show that either of these checks were paid.

The hearing board concluded that the respondent's conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of the lawyer's client through reasonably available means); DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client); DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship); DR 9–102(A) (all funds of clients paid to the lawyer shall be deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located); DR 9–102(B)(3) (failure to maintain complete records of client property in the possession of the lawyer and to render appropriate accounts to the client regarding the property).

Moreover, the two checks that the Abells gave to the respondent totaling $7,097.00 were deposited into his business account on April 25, 1990. By May 7, 1990, however, the account balance had been reduced to $1,169.77, even though neither the IRS nor the Department of Revenue had been paid. The respondent therefore converted $5,927.23 to his own personal use, in violation of DR 1–102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude); DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 7–101(A)(3) (intentionally prejudice or damage the client); and DR 9–102(A) (client funds shall be deposited in one or more identifiable interest-bearing depository accounts).

Finally, in his response to the Abells' request for investigation, the respondent enclosed a letter to the Office of Disciplinary Counsel purporting to be "authored" by the Abells, and which stated that they had determined that their tax issues had been resolved to their "full and complete satisfaction," and expressing the belief that there was no longer "any basis for proceeding with any form of grievance" against the respondent. In fact, the letter was not "authored" by the Abells, was not signed by them, and was sent without their knowledge. Consequently, the respondent again violated DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), as well as DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice).

## II.

The hearing panel approved the hearing board's recommendation that the respondent be disbarred, pay restitution, and be assessed the costs of the proceedings. The knowing conversion of client funds requires disbarment, at least in the absence of significant factors in mitigation. *People v. Young,* 864 P.2d 563, 564 (Colo.1993) (knowing conversion of clients' funds warrants disbarment even absent prior disciplinary history and despite cooperation and making restitution); *see also People v. Ogborn,* 887 P.2d 21 (Colo. 1994) (disbarment appropriate for knowing conversion of client funds despite absence of prior discipline); *People v. Robnett,* 859 P.2d 872, 878 (Colo.1993) (attorney disbarred for conversion of client funds and deception of client).

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) provides that, in the absence of mitigating circumstances, "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." ABA *Standards* 4.11. In addition to the amount that the respondent converted from the Abells, the respondent has not paid the Abells' state tax liability, which has not yet been fully resolved.

The respondent defaulted before the hearing board, and no mitigating factors were found. In aggravation, however, the respondent previously received a private censure, *id.* at 9.22(a); had a dishonest or selfish motive, *id.* at 9.22(b); there is a pattern of misconduct consisting of multiple misrepresentations and fraudulent acts, *id.* at 9.22(c); there are multiple disciplinary offenses, *id.* at 9.22(d); a bad faith obstruction of the disciplinary proceedings by the respondent's failure to appear and default, *id.* at 9.22(e); the submission of false statements to the Office of Disciplinary Counsel consisting of the letter purporting to be authored by the Abells, *id.* at 9.22(f); the refusal to acknowledge the wrongful nature of conduct, *id.* at 9.22(g); substantial experience in the practice of law, *id.* at 9.22(i); and indifference to making restitution, *id.* at 9.22(j).

Disbarment is the only appropriate sanction in this case, and we therefore accept the recommendation of the hearing panel, including the requirement that the respondent make restitution, as set out by the hearing board in its findings of fact and recommendations.

### III.

It is hereby ordered that David William Bowman be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is also ordered that, prior to any application for readmission, the respondent make restitution to the Abells as set forth on page 12 of the "Findings of Fact and Recommendation of the Hearing Board." It is further ordered that the respondent pay the costs of this proceeding in the amount of $1,409.87 within ninety days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.

