The PEOPLE of the State of Colorado, Complainant,

v.

David William BOWMAN, Attorney–Respondent.

No. 95SA39.

Supreme Court of Colorado, En Banc.

May 8, 1995.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

No appearance by attorney-respondent.

PER CURIAM.

The respondent in this lawyer discipline proceeding was disbarred on December 19, 1994. *People v. Bowman*, 887 P.2d 18 (Colo. 1994). Following the respondent's disbarment, this disciplinary proceeding was submitted to the court. A hearing panel of the Supreme Court Grievance Committee approved the findings and recommendation of the hearing board that the respondent be disbarred, pay restitution prior to any application for readmission, and be assessed the costs of the proceeding. The respondent defaulted before the grievance committee and has not appeared in this court. We approve the findings of the panel and board, and order that the respondent pay restitution prior to any application for readmission as set forth in the board's report, and pay the costs of the proceeding. We need not actually reach the issue of the appropriate discipline since the respondent has already been disbarred, although the panel's recommendation is obviously correct.

I

The respondent was admitted to the Colorado bar on October 17, 1977. Even though now disbarred, he remains subject to the jurisdiction of this court and its grievance committee for his failure to comply with the Code of Professional Responsibility and the Rules of Professional Conduct while he practiced law. *People v. Koransky*, 830 P.2d 490, 491 (Colo.1992); C.R.C.P. 241.1(b). Two formal complaints filed by the assistant disciplinary counsel were consolidated. The respondent did not appear and did not answer the complaints, so an order of default was entered and the allegations of fact in the complaints were deemed admitted. *People v. Barr*, 855 P.2d 1386, 1386 (Colo.1993); C.R.C.P. 241.13(b). Based on the respondent's default, and evidence tendered by the assistant disciplinary counsel, the hearing board found that the following was established by clear and convincing evidence.

A

Beginning in June 1992, and continuing through 1993, the respondent neglected a legal matter between two of his clients that had been entrusted to him, and then did not recognize serious conflicts arising from the dual representation. He even continued to represent one of the clients against the other, former, client. The board found that the respondent's conduct violated DR 5–105(A) (a lawyer shall decline proffered employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be affected by the acceptance of the proffered employment, or which would be likely to involve the lawyer in representing differing interests); DR 5–105(B) (a lawyer shall not continue multiple employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing different interests, except to the extent permitted by DR 5–105(C)); and DR 6–101(A)(2) (a lawyer shall not handle a legal matter entrusted to the lawyer without adequate preparation under the circumstances). On and after January 1, 1993, the effective date of the Rules of Professional Conduct, he violated R.P.C. 1.9(a) (a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation).

B

In 1985, the respondent was divorced from his former spouse, and as part of the stipulation and order, he agreed to execute a $40,000 promissory note payable to his former wife. In November 1985, he married Laurie A. Daniels, and in 1989, the respondent and

Daniels borrowed $40,000 from Daniels's parents to purchase a home. The respondent then had Daniels sign a blank deed of trust, saying that it would secure her parents' loan, but he instead used the deed of trust to secure the $40,000 obligation to his former wife. He therefore defrauded Daniels contrary to DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Daniels filed for dissolution of marriage from the respondent in 1991. He lied, in violation of DR 1–102(A)(4), during a deposition taken by Daniels's lawyer when he stated that he had filed all state and federal tax returns from 1985 through 1991. In fact, a tax lien was filed against the house owned by Daniels and the respondent for back taxes the respondent owed.

In September 1993, the respondent moved to set aside the separation agreement on the ground that he entered into the agreement on the condition that Daniels not file a grievance with the supreme court against him related to the deed of trust he gave to his ex-wife. Attached to the motion was an unsigned release agreement purportedly between himself and Daniels. In fact, Daniels had not signed the release agreement and did not agree to its terms. The respondent's conduct thus violated R.P.C. 3.3(a)(1) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); and R.P.C. 8.4(d) (engage in conduct that is prejudicial to the administration of justice).

In addition, the respondent did not respond to the request for investigation that Daniels filed against him, contrary to C.R.C.P. 241.6(7) (failure to respond to a request by the grievance committee without good cause shown, or obstruction of the committee or any part thereof in the performance of its duties constitutes ground for lawyer discipline).

C

In 1991, Midway Land Fill, Inc., represented by the respondent, filed an action for money due on a contract against General Motors Corporation (GMC). In June 1992, GMC issued a settlement check for $85,000 to Midway. Midway's owner, Vernie Houtchens, endorsed the check. The respondent told him that a recently discovered document showed that GMC had hidden some evidence and that GMC might be persuaded to pay more than the $85,000, so the funds would be placed in escrow. The respondent, however, deposited it into the law firm's operating account.

In March 1993, without Houtchens's knowledge or permission, the respondent directed the firm's bookkeeper to release the $85,000 to him. The respondent told one of his partners that the Midway case had settled and he paid the partner $2,250 for legal research the partner had performed on the case. In December 1993, Houtchens called the law firm of one of the respondent's former partners and was informed that the $85,000 had already been disbursed on the respondent's instructions.

The respondent converted the $85,000 to his personal use. There is no evidence that the respondent has paid any of the money to Houtchens. The hearing board concluded that the respondent's conduct violated section 18–4–401, 8B C.R.S. (1986 & 1992 Supp.) (theft), as well as DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); R.P.C. 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 1.15(a) (a lawyer shall hold property of clients separate from the lawyer's own property); R.P.C. 1.15(b) (a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive).

The respondent's license to practice law in Colorado was suspended under C.R.C.P. 241.8, effective June 7, 1993, pending the outcome of disciplinary proceedings. Nevertheless, on June 21, 1993, the respondent called GMC's counsel, and told him that he had been authorized by his clients to settle the case by stipulating to a dismissal. The opposing counsel did not agree to the proposed disposition. The respondent's conduct

violated R.P.C. 1.16(a)(1) (a lawyer shall withdraw if the representation will result in violation of the rules of professional conduct or other law), and R.P.C. 8.4(d) (conduct prejudicial to the administration of justice).

## D

The respondent represented the personal representative of an estate, Cheryl Johnson, in a matter pending in the Probate Court in the City and County of Denver. The respondent neglected the matter, and the neglect caused serious harm when Johnson was cited for contempt numerous times, directly resulting in her arrest and incarceration for contempt of a court order. The respondent appeared on behalf of Johnson in the probate court two months after the effective date of his immediate suspension, and he did not notify the court that he had been suspended.

Moreover, Johnson discovered in January 1994 that approximately $85,000 that she had given to the respondent for payment of estate taxes had not been paid to the IRS. Evidence indicates that the $85,000 was deposited in the law firm's operating account. In April, August, and September 1992, the respondent converted the approximately $85,000 to his personal use. Although he sent Johnson about $85,000 on January 20, 1994, the board found that interest and penalties will probably be assessed against the personal representative of the estate because of the failure to pay estate taxes when they were due.

The respondent's conduct therefore violated DR 1–102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude); DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer); DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship); and DR 9–102(A) (failure to segregate client funds in trust account). On and after January 1, 1993, he violated R.P.C. 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit

or misrepresentation); R.P.C. 5.5(a) (practicing law in a jurisdiction contrary to the regulations of the legal profession); R.P.C. 1.15(a) (a lawyer shall hold property of clients separate from the lawyer's own property); R.P.C. 1.15(b) (a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive). Finally, his conduct was contrary to C.R.C.P. 241.6(3) (misconduct violating the highest standards of honesty, justice or morality); C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States); C.R.C.P. 241.6(6) (any act or omission which violates the rules regarding lawyer discipline and disability or which violates an order of discipline or disability); and C.R.C.P. 241.21(a), (b) (required actions after disbarment or suspension).

## E

In the last two counts, the respondent continued to represent clients in Colorado and New Mexico following the order of immediate suspension. His conduct violated R.P.C. 1.3 (neglect); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); as well as R.P.C. 5.5(a) (practicing law in a jurisdiction contrary to the regulations of the legal profession).

## II

The respondent has already been disbarred. Nevertheless, we accept the hearing board's and panel's recommendations that the respondent be required to comply with certain conditions of restitution. Accordingly, it is hereby ordered that prior to any petition for readmission, and as a condition for readmission, the respondent pay restitution as set forth in the Findings of Fact, Conclusion, and Recommendation of the Hearing Board, Case No. GC 94B–23 (Nov. 30, 1994), at page 27, and attached to this opinion as an Appendix. It is further ordered that Bowman pay the costs of this proceeding in the amount of $239.43, within thirty days after the announcement of this opinion, to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite

500–S, Dominion Plaza, Denver, Colorado 80202.

APPENDIX

The hearing board unanimously recommends that respondent be disbarred from the practice of law. The hearing board further recommends that respondent be ordered to make restitution as follows: To Laurie Daniels' mother $48,000 plus interest dating from May, 1989 (pursuant to the promissory note in favor of Ms. Daniels' mother and Ms. Daniels' separation agreement and divorce decree); To Laurie Daniels for any state or federal tax liability she may incur for the tax years 1985, 1986, 1988, 1989, 1990, or 1991; To Laurie Daniels for any judgments related to respondent's failure to comply with the terms of the settlement agreement subject of his marital dissolution from Laurie Daniels, or resulting from the misconduct alleged herein; To Cheryl Johnson for any interest or penalties assessed against her by the IRS or state tax authorities for his failure to timely pay the $85,000 in estate tax; To Vernie Houtchens $85,000 plus interest dating from June 26, 1992.